UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
(WEST PALM BEACH DIVISION)

CASE NO. 11-80247-CV-HURLEY/HOPKINS

JJD ASSOCIATES OF PALM BEACH,
LTD.,

Plaintiff,

v.

AMERICAN EMPIRE SURPLUS LINES
INSURANCE COMPANY,

     Defendant.

## DEFENDANT'S MOTION FOR FINAL SUMMARY JUDGMENT

Defendant/Counter-Plaintiff, AMERICAN EMPIRE SURPLUS LINES INSURANCE COMPANY, ("American Empire"), through its undersigned counsel moves for Summary Final Judgment and a finding that the subject American Empire insurance policy does not afford any coverage for the theft or damage claimed by Plaintiff and as grounds therefor states as follows:

## INTRODUCTION

This is an action for declaratory relief. American Empire has filed a counterclaim for declaratory relief for the purpose of obtaining a determination that it does not provide any coverage with respect to the claims for damage which have been asserted against it in this action.

## STATEMENT OF UNDISPUTED MATERIAL FACTS

1.      Plaintiff, JJD Associates of Palm Beach, Ltd ("JJD") was the owner of a building located at 7440 Lake Worth Road, Lake Worth, Florida 33467 ("the building"). Deposition of David Ezagui, Attached Exhibit "A", Page 7, Lines 19-22.

2.      In the present action, JJD asserts that on or about October 8, 2009, the building was damaged as a result of burglary and/or vandalism.   See Plaintiff's Complaint, Attached Exhibit "B", Paragraph 5.

3.      The building was not occupied either by a tenant or JJD when the theft and/or vandalism took place, and had not been occupied for 60 days prior to that theft and/or vandalism. Deposition of David Ezagui, Attached Exhibit "A", Page 8, Line 25 – Page 11, Line 25.

4.      JJD seeks damages for breach of contract because it claims that American Empire, which issued a standard fire insurance policy, number 8-CP-2-44-29 to JJD, wrongfully denied coverage for the subject loss.  See Plaintiff's Complaint, Attached Exhibit "B".

5.      In response, American Empire has filed a counterclaim for declaratory relief, D.E. 4, arguing that its policy does not provide coverage.

6.      American Empire had issued a property policy to JDD, which was effective from December 13, 2008 through December 13, 2009.  The policy provides, in pertinent part:

> Various provisions in this policy restrict coverage.  Read the entire policy to carefully to determine rights, duties and what is and is not covered.

> Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations.  The words "we", "us" and "our" refer to Company providing this insurance.  Other words and phrases that appear in quotation marks have special meaning.  Refer to Section **H**, Definitions.

> *****

> 6. Vacancy

a. Description of Terms

(1) As used in this Vacancy Condition, the term building and the term vacant have the meanings set forth in (1)(a) and (1)(b) below;

    b. When this policy is issued to the owner or general lessee of a building, building means the entire building. Such building is vacant unless at least 31% of its total square footage is:

        (i) Rented to a lessee or sub-lessee and used by the lessee or sub-lessee to conduct its customary operations; and/or

        (ii) Used by the building owner to conduct customary operations.

b. Vacancy Provisions

    If the building where loss or damage occurs has been vacant for more than 60 consecutive days before that loss or damage occurs:

(1) We will not pay for any loss or damage caused by any of the following even if they are Covered Causes of Loss:

        (a) Vandalism;

        (b) Sprinkler leakage, unless you have protected the system against freezing;

        (c) Building glass breakage;

        (d) Water damage;

        (e) Theft; or

        (f) Attempted theft

A certified copy of American Empire's policy is attached hereto as Exhibit "C".

FOWLER WHITE BURNETT P.A. • ONE FINANCIAL PLAZA, SUITE 2100, 100 SOUTHEAST THIRD AVENUE, FORT LAUDERDALE, FL 33394• (954) 377-8100

7.      It is undisputed that the building where the theft and/or vandalism took place was vacant for 60 days prior to and including the date of loss.  Deposition of David Ezagui, Attached Exhibit "A", Page 8, Line 25 – Page 11, Line 25.

8.      Accordingly, the subject loss is excluded under the policy.

## MEMORANDUM OF LAW

### I.      Summary Judgment Standard

Summary judgment is appropriate where "there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317; 106 S. Ct. 2548, 2552 (1986); *Gas Kwick, Inc. v. United Pacific Ins. Co.*, 58 F.3d 1536 (11th Cir. 1995); *William Penn Life Ins. Co. of New York v. Sands*, 912 F.2d 1359 (11th Cir. 1990).  The existence of some factual disputes will not defeat an otherwise properly supported motion for summary judgment. "The requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  Once a party properly makes a summary judgment motion by demonstrating the absence of a genuine issue of material fact, the nonmoving party must go beyond the pleadings through the use of affidavits, depositions, answers to interrogatories and admissions on file, and designate specific facts showing that there is a genuine issue for trial. *Celotex*, 477 U.S. at 324.

Summary judgment is particularly appropriate to resolve questions of insurance coverage, since the interpretation of a written contract is a matter of law to be determined by the court. *Technical Coating Applicators, Inc. v. U.S. Fidelity and Guar. Co.*, 157 F. 3d 843 (11th Cir. 1998);  *DEC Electric, Inc. v. Raphael Construction Corp.*, 558 So. 2d 427 (Fla. 1990); *Jones v. Utica Mutual Ins. Co.*, 463 So. 2d 1153 (Fla. 1985).  In this case, American Empire is entitled to

summary judgment on the basis of the plain meaning and legal effect of its policy, which excluded losses from theft or vandalism to a building which was vacant for 60 days prior loss. Vacancy is clearly defined by the terms and conditions of the subject policy

In *Shapiro v. Associated Intern. Ins. Co., 899 F. 2d 1116, 1118 (11th Cir. 1990)*, the Eleventh Circuit explained in an insurance case that, "as a preliminary matter, we must determine which state's substantive law the Florida Supreme Court would choose to govern the interpretation of the policy, as we are bound to decide the case the way it appears the state's highest court would."[1]. *Id.*

With regard to substantive law, Florida courts apply the *lex loci contractus* rule, which directs that the law of the state where the contract was made governs. *Id.*, at 1119. Since the present case involves a policy issued to cover several buildings in South Florida, this Court should apply Florida law in interpreting the subject policy to determine whether the loss is excluded under the terms and conditions of the policy. The policy was issued in Florida, the buildings insured were located in Florida and the alleged loss occurred in Florida. Accordingly, Florida law governs the determination of whether the subject policy affords coverage.

## II.     The Subject Policy has a Clear and Applicable Exclusion

The subject policy states in the Building and Personal Property Coverage Form:

> Various provisions in this policy restrict coverage.  Read the entire policy to carefully to determine rights, duties and what is and is not covered.

---

[1] This matter comes before the Court on the basis of diversity jurisdiction pursuant to 28 U.S.C. Section 1332.  Accordingly, Florida law controls the substantive coverage issues presented in this case. *See Technical Coating Applicators, Inc. v. U.S. Fidelity and Guar. Co.*, 157 F. 3d 843, (11th Cir. 1998); *Fernandez v. Bankers National Life Ins. Co.*, 906 F. 2d 559, (11th Cir. 1990); *Shapiro v. Associated Intern. Ins. Co.*, 899 F. 2d 1116, 1118 (11th Cir. 1990).

FOWLER WHITE BURNETT P.A. • ONE FINANCIAL PLAZA, SUITE 2100, 100 SOUTHEAST THIRD AVENUE, FORT LAUDERDALE, FL 33394• (954) 377-8100

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we", "us" and "our" refer to Company providing this insurance. Other words and phrases that appear in quotation marks have special meaning. Refer to Section **H**, Definitions.

\*\*\*\*\*

6. Vacancy

a. Description of Terms

(1) As used in this Vacancy Condition, the term building and the term vacant have the meanings set forth in (1)(a) and (1)(b) below;

    b. When this policy is issued to the owner or general lessee of a building, building means the entire building. Such building is vacant unless at least 31% of its total square footage is:

        (i) Rented to a lessee or sub-lessee and used by the lessee or sub-lessee to conduct its customary operations; and/or

        (ii) Used by the building owner to conduct customary operations.

b. Vacancy Provisions

    If the building where loss or damage occurs has been vacant for more than 60 consecutive days before that loss or damage occurs:

    (1) We will not pay for any loss or damage caused by any of the following even if they are Covered Causes of Loss:

        (a) Vandalism;

        (b) Sprinkler leakage, unless you have protected the system against freezing;

        (c) Building glass breakage;

        (d) Water damage;

        (e) Theft; or

        (f) Attempted theft

(See Attached Exhibit "C", a Certified Copy of the Applicable Policy, and Paragraphs 22 and 24 of D.E. 18, Plaintiff's Amended Answer to American Empire's Counterclaim for Declaratory Relief).

This policy language is clear, there is no coverage for a loss to a building due to the events described in sections (b)(1)(a) – (b)(1)(f) when that building is vacant for the 60 days leading up to the loss. "Vacancy" is clearly defined in the policy as well. To be occupied, at least 31% of building must be rented and used, or the building must be used by its owner for customary operations. The building in question was vacant.

Vacancy exclusions like the one at issue have long been upheld in Federal and State Courts. See *Gas Kwick, Inc. v. United Pacific Insurance Company*, 58 F.3d 1536 (11th Cir. 1995) (*applying Florida law*); *Sorema N. Am. Reinsurance Co. v. Johnson*, 258 Ga. App. 304 (Ga. Ct. App. 2002); *Myers v. Merrimack Mut. Fire Ins. Co.*, 788 F.2d 468 (7th Cir. 1986); *Dunton v. Connecticut Fire Ins. Co.*, 371 F.2d 329 (7th Cir. 1967); Jelin v. Home Ins. Co., 72 F.2d 326 (3d Cir 1934); *Saiz v. Charter Oak Fire Ins. Co.*, 299 Fed. Appx. 836 (10th Cir. 2008). In *Gas Kwick, Inc. v. United Pacific Insurance Company*, the 11th Circuit Court of Appeals heard a case which had previously been decided by the United States District Court for the Middle District of Florida. United Pacific Insurance Company insured multiple commercial properties owned by Gas Kwick[2]. One of the commercial properties listed as a covered property was an "'Oper. Bulk Plant and Warehouse.'" *Gas Kwick*, at 1537. The location had several above ground tanks for storing reclaimed oil and a warehouse which was unused and empty. *Id.* The

---

[2]   In the instant case, American Empire provided coverage to JJD for seven separate buildings, each with a separate limit of insurance. The only building for which a claim is being made is the building located at 7440 Lake Worth Road, Lake Worth, Florida 33467. See

FOWLER WHITE BURNETT P.A. • ONE FINANCIAL PLAZA, SUITE 2100, 100 SOUTHEAST THIRD AVENUE, FORT LAUDERDALE, FL 33394• (954) 377-8100

warehouse burned to the ground during the relevant policy period after having been empty for over a year. *Id.* As in the instant case, the United Pacific policy indicated it was subject to limitations within the policy. United Pacific denied the claim based on it policy language which provided, "'We will not pay for: 10. Loss to building or personal property if the building where loss or damage occurs has been vacant or unoccupied more than sixty (60) consecutive days before that loss or damage.'" *Id.*, at 1538. In *Gas Kwick*, the primary dispute was whether the 60 day vacancy period could have began to run prior to the policy inception date. The Court ruled that it could. Inherent in the ruling was the upholding of language excluding coverage for a building vacant for 60 days prior to the date of loss.

In the instant case there is no dispute that the building at 7440 Lake Worth Road was completely vacant at the time of the loss and that it had been vacant for 60 days. Mr. Ezagui, the manager and person with the most knowledge regarding JJD, said clearly in his deposition that the building could not be subdivided (Exhibit "A", Page 18, 11-19) and that the building had not been occupied since June 30, 2009 at the latest. ( Exhibit "A", Pages 8-11). Because the loss occurred on October 8, 2009 (Exhibit "B", Paragraph 5), there is no question that the building was vacant for 60 days prior to the loss.

Mr. Ezagui indicated in his deposition that the tenant prior to the vacancy period stopped occupying the building sometime in June of 2009. (Exhibit "A", Page 11, Lines 2-4. Assuming the building was abandoned by the tenant, Cohiba Restaurant, on June 30, 2009, the very latest day possible according to Mr. Ezagui; it would have been vacant for 100 days when the robbery took place. The language of the American Empire policy is clear and unambiguous and the facts are certain with regard to the vacancy of the subject building; hence, a determination of no coverage must be ordered.

FOWLER WHITE BURNETT P.A. • ONE FINANCIAL PLAZA, SUITE 2100, 100 SOUTHEAST THIRD AVENUE, FORT LAUDERDALE, FL 33394• (954) 377-8100

The issues in this motion have been readily apparent and available to JJD since they first filed their breach of contract action. For that reason, a Motion for Sanctions under Rule 11 of the Federal Rules of Civil Procedure has been filed at the same time as this Motion.

## **CONCLUSION**

The policy language excludes any building from coverage for theft/vandalism which has been vacant for 60 consecutive days prior to the loss. The building in question was "vacant" under the terms of the policy and the facts of the case. Summary judgment should be granted on American Empire's counterclaim for declaratory relief because the building in question falls within the vacancy exclusion of the policy.

WHEREFORE, Defendant/Counter-Plaintiff, AMERICAN EMPIRE SURPLUS LINES INSURANCE COMPANY, respectfully requests this Court to grant its Motion for Summary Judgment declaring that no coverage exists under its policy for the claim made by JJD .

s/ Morris D Pataky
RORY ERIC JURMAN
Fla. Bar No. 194646
Email: rjurman@Fowler-white.com
MORRIS D PATAKY
Fla. Bar No. 564311
Email: mpataky@fowler-white.com

FOWLER WHITE BURNETT P.A.
One Financial Plaza, Suite 2100
100 Southeast Third Avenue
Fort Lauderdale, Florida 33394
Telephone: (954) 377-8100
Facsimile: (954) 377-8101
Counsel for *TRAVELERS PROPERTY &
CASUALTY COMPANY OF AMERICA*

*Case No. 9:11-cv-80247-HURLEY-HOPKINS*

## CERTIFICATE OF SERVICE

I hereby certify that on June 16, 2011, the foregoing document was electronically filed with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF.

s/ Morris D. Pataky_____
Morris D. Pataky

**SERVICE LIST**
**MERCEDES BEDOYA v. TRAVELERS**
**_CASE NO. 8:10-cv-01530-RAL-TGW_**

Gene Odom, Esq.
Maryann Masella, Esq.
Garret Raines, Esq.
Martinez Odom Law Group
1111 Oakfield Drive, Suite 115
Brandon, Florida 33511
Email: geneodom@injurysolution.com
Email: maryann@injurysolution.com
Telephone: (813) 875-4414
Facsimile:  (813) 653-3175
***Attorneys for Plaintiff***

W:\82173\MOTION05-SJ dec relief 2nd draft-MDP.docx

FOWLER WHITE BURNETT P.A. • ONE FINANCIAL PLAZA, SUITE 2100, 100 SOUTHEAST THIRD AVENUE, FORT LAUDERDALE, FL 33394• (954) 377-8100

Page 1

```
 1                UNITED STATES DISTRICT COURT
                  SOUTHERN DISTRICT OF FLORIDA
 2                 WEST PALM BEACH DIVISION
 3                  No. 9:11-CV-80247-XXXX
 4  JJD ASSOCIATES OF PALM BEACH,
    LTD.,
 5
                      Plaintiff,              CERTIFIED
 6  vs.                                       TRANSCRIPT
 7  AMERICAN EMPIRE SURPLUS LINES
    INSURANCE COMPANY,
 8
                      Defendant.
 9  _____/
10                           2255 Glades Road
                             Boca Raton, Florida
11                           May 23, 2011
                             11:00 a.m. - 11:29 a.m.
12
13
14       VIDEOTAPED DEPOSITION OF DAVID EZAGUI
15
16       Taken before KIMBERLY FONTALVO, REGISTERED
17  PROFESSIONAL REPORTER, CERTIFIED LIVENOTE REPORTER,
18  and Notary Public for the State of Florida at Large,
19  pursuant to Notice of Taking Deposition filed in the
20  above cause.
21
22
23                                    EXHIBIT
24                                       A
25
```

Page 2

1  APPEARANCES:
2
  On behalf of Plaintiff:
3
  KNOERR & RATLIFF LAW GROUP, P.A.
4  9900 W. Sample Road, Ste. 330
  Coral Springs, FL 33065
5  BY: RYAN C. RATLIFF, ESQ.
6
  On behalf of Defendant:
7
  FOWLER, WHITE, BURNETT, P.A.
8  100 Southeast 3rd Ave., Ste. 1100
  Fort Lauderdale, FL 33394
9  BY: MORRIS PATAKY, ESQ.
10
11
12  ALSO PRESENT: Fred Veitch, Videographer
13
14
15          I N D E X
16
  Examination                    Page
17  Direct    By Mr. Pataky:          3
18          DEFENSE EXHIBITS
19  No.                            Page
20  Exhibit A    Lease             12
21
22
23  Exhibit retained by reporter and attached hereto.
24
25

Page 3

1          VIDEOGRAPHER:  On the video record.  This
2  is the video deposition of David Ezagui, in the
3  matter of JJD Associates of Palm Beach, Limited
4  versus American Empire Surplus Lines Insurance
5  Company.
6          My name is Fred Veitch, videographer with
7  Veritext.  The court reporter is Kim Fontalvo
8  with Veritext.
9          Today is May 23, 2011, and the time is
10  11:04 a.m.
11          At this time, would Counsel please state
12  their appearances for the record.
13          MR. PATAKY:  Morris Pataky on behalf of
14  American Empire Surplus Lines Insurance
15  Company.
16          MR. RATLIFF:  Ryan Ratliff on behalf of
17  JJD.
18  Thereupon:
19          DAVID EZAGUI
20  a witness named in the notice heretofore filed,
21  being of lawful age and having been first duly
22  sworn, testified on his oath as follows:
23          DIRECT EXAMINATION
24  BY MR. PATAKY:
25  Q.  Mr. Ezagui, my name's Morris Pataky.  I

Page 4

1  represent American Empire Surplus Lines Insurance
2  Company.  I just want to give you a couple of ground
3  rules.  I'm sure there are things you probably
4  already spoke about with your attorney.  But to the
5  extent that you don't understand the question I've
6  asked, just let me know and I'll try to rephrase it
7  in a way that you can understand it.
8      A.  Right.
9      Q.  Beyond that, you know we're on video, so
10  we'll be able to see if you're nodding your head up
11  and down.  But for the transcript, we won't
12  understand things if you're just shaking your head
13  up and down or side to side, so try to answer
14  verbally.  Because if she takes down "uh-huh" or
15  "huh-uh --"
16      A.  Yeah, yeah.
17      Q.  You understand?
18      A.  Okay, that's fine.
19      Q.  That's fine.  The only other thing I would
20  tell you is what's happening now, is that sometimes
21  these things tend to degenerate into conversations,
22  because you know what I'm asking before I'm done
23  asking it, and I may assume that you're done
24  answering before you're done answering.  So, if we
25  just give each other time to finish what we're

Page 5

1  saying before the other person answers, then we'll
2  be all set.
3      A.  That's fine.  Okay.
4      Q.  Doing it again though.
5          Could you state your name for the record?
6      A.  David Ezagui.
7      Q.  How do you spell Ezagui?
8      A.  E-Z-A-G-U-I.
9      Q.  What's your business address, Mr. Ezagui?
10      A.  7336 Lake Worth Road, Lake Worth, Florida
11  33467.
12      Q.  And do you work for a company or do you
13  work for yourself?
14      A.  I work for a company.
15      Q.  What's the name?
16      A.  JJD Associates.
17      Q.  Well, let me ask you a question.  I saw
18  when I looked up the entity JJD Associates -- is it
19  JJD Associates or JJD Associates of Palm Beach?
20      A.  JJD Associates of Palm Beach.
21      Q.  When I looked up JJD Associates of Palm
22  Beach, it listed the officer of JJD Associates of
23  Palm Beach as Westmount Management; is that correct?
24      A.  Yes, Westmount manage JJD, and we are a
25  part of Westmount, yeah.

2 (Pages 2 - 5)

Page 6

1   Q.   So do you work for Westmount Management or
2   do you work for JJD?
3   A.   JJD.
4   Q.   What's your position at JJD?
5   A.   Manage the place, rent it, try to collect
6   rent.  Manager.
7   Q.   Manager.
8        Does anybody else work for JJD Associates?
9   A.   I have a secretary.
10  Q.   What's your secretary's name?
11  A.   Lyne, L-Y-N-E.
12  Q.   Is that her first name or her last name?
13  A.   First name.
14  Q.   What's her last name?
15  A.   I don't remember.  Sorry.
16  Q.   It's okay.  Does anybody else work for
17  JJD?
18  A.   Yeah, I have a guy who do some cleaning,
19  like repairs, small repairs, his name is Felix.
20  Q.   Felix?
21  A.   Sanchez, S-A-N-C-H-E-Z.
22  Q.   And he's like the handyman?
23  A.   Handyman.  Makes some repair.  Clean the
24  place.  Looking around.
25  Q.   Other than Lyne and Felix Sanchez, does

Page 7

1   anyone else, aside from the two of them and you,
2   work for JJD Associates of Palm Beach?
3   A.   No, that's all.
4   Q.   Are you the best person to talk about
5   whether or not -- let me strike that.  Let me go
6   back.
7        The business of JJD Associates, they own
8   property?
9   A.   Correct.
10  Q.   And they then rent the property?
11  A.   Correct.
12  Q.   Does JJD Associates do any other kind of
13  business?
14  A.   No, no, only --
15  Q.   Are you the best person to know about or
16  to talk to about the business operations of JJD
17  Associates?
18  A.   Yeah.  Yes.
19  Q.   I understand one of the buildings that JJD
20  Associates owns has an address 7440 Lake Worth Road;
21  is that right?
22  A.   Correct.  Yeah, correct.
23  Q.   That building at 7440 Lake Worth Road, is
24  that building attached to any other building?
25  A.   No, it's completely separate.

Page 8

1   Q.   Is that building currently in use?
2   A.   No.  Now it's occupied.
3   Q.   It's occupied now?
4   A.   Now.  About a month ago.
5   Q.   I'm sorry?
6   A.   One month ago.
7   Q.   One month ago.
8        So some time in April 2011 it became
9   occupied?
10  A.   Yeah, correct.
11  Q.   Who's occupying it?
12  A.   An arcade place.  Like arcade, like they
13  have machine.
14  Q.   Video games?
15  A.   Video games, all that, right.
16  Q.   Are they serving food there also?
17  A.   No.
18  Q.   Prior to -- what's the name of the
19  business that occupied it?
20  A.   Casino.
21  Q.   Casino?
22  A.   Yeah.  Casino Magic, I think.
23  Q.   Casino Magic?
24  A.   Yeah.
25  Q.   Prior to April 2011, when Casino Magic

Page 9

1   began to occupy the building, when was the last time
2   before that that it was occupied?
3   A.   The restaurant.  The restaurant Cohiba
4   we're talking about.
5   Q.   The Cohiba Restaurant, C-O-H-I-B-A?
6   A.   Yeah.
7   Q.   Between the time that Cohiba Restaurant
8   occupied the building and Casino Magic occupied the
9   building, nobody else occupied the building?
10  A.   No, it was empty.
11  Q.   When did Cohiba Restaurant stop occupying
12  the building?
13  A.   I think it was July 2009.  June,
14  June 2009.
15  Q.   Do you remember if it was June or July?
16  A.   I would say it was like -- I would say it
17  was in June.
18  Q.   In June?
19  A.   Yeah, I would say mid June.
20  Q.   Do you remember what day in June?
21  A.   No.
22  Q.   I understand Cohiba Restaurant, that
23  was -- the woman who operated Cohiba Restaurant was
24  that Irma Peña?
25  A.   Yeah, correct, with her husband.  Both.

3 (Pages 6 - 9)

Page 10

1    Q.   She and her husband?
2    A.   Correct.
3    Q.   And they had a lease with you as well,
4 right?
5    A.   Correct, yeah.
6    Q.   Do you have a copy of that lease with you?
7    A.   I think so. My lawyer has it.
8    Q.   I think I might have some copies.
9        MR. RATLIFF: It's attached as B to the
10 admissions.
11       MR. PATAKY: I saw that.
12 BY MR. PATAKY:
13   Q.   Was that the lease between you and
14 Miss Pena?
15   A.   Between the company, JJD --
16   Q.   I understand. That was inartfully
17 phrased.
18       So what you're looking at that there --
19   A.   That's the lease.
20   Q.   -- that's the lease between you and -- I'm
21 sorry, between JJD Associates of Palm Beach Limited
22 and Irma Pena?
23   A.   Correct.
24   Q.   The term of this lease was supposed to
25 take it through January 2011; is that right?

Page 11

1    A.   Yeah, yeah.
2    Q.   But you said that they stopped occupying
3 the property in June of 2009?
4    A.   Yeah, June 2009, yeah.
5    Q.   Did they communicate with you that they
6 were terminating the lease?
7    A.   No, no. No never did.
8    Q.   So what happened?
9    A.   Well, I find that they left the premises.
10 I find that -- when we went to collect the rent, we
11 find that the premises was vacant.
12   Q.   Do you remember what date that was?
13   A.   Maybe a week after. Maybe.
14   Q.   If you need to take the call --
15   A.   No, it's okay, it's okay. Sorry. Go
16 ahead.
17   Q.   When you say that they stopped occupying
18 the property in June 2009, was that the time when
19 you went to see the property and they were no longer
20 at the property?
21   A.   Correct, yeah.
22   Q.   So even though you had this lease through
23 January of 2011, they were no longer in the property
24 as of June 2009?
25   A.   Correct.

Page 12

1        MR. PATAKY: We'll attach this Shopping
2 Center Lease, just the two pages of it, if
3 that's okay to you, that you attached to your
4 Response to Request for Admissions, as
5 Defendant's Exhibit A to this deposition.
6        (Thereupon, the referred-to document was
7 marked by the court reporter for Identification
8 as Defendant's Exhibit A).
9        MR. PATAKY: You can make sure it's the
10 same one.
11 BY MR. PATAKY:
12   Q.   Okay. When did the burglary occur at the
13 property? When I say the property, I'm talking
14 about 7440 Lake Worth Road.
15   A.   I don't know. I have the reports of the
16 police. So when we went there, we find that the
17 place was completely vandalized and then we called
18 the police. I don't remember the date. It's in the
19 police report.
20   Q.   Okay. So it's your understanding that
21 there's a police report which indicates the date?
22   A.   Exactly.
23   Q.   If I told you that I thought the date was,
24 and that the police report indicated the date was
25 October 8, 2009, does that seem correct to you?

Page 13

1    A.   Well, whatever the police report say.
2    Q.   Okay.
3    A.   I don't remember.
4    Q.   Do you want to take a look at it?
5    A.   Yeah.
6        MR. RATLIFF: I don't have a full copy.
7        MR. PATAKY: Okay.
8 BY MR. PATAKY:
9    Q.   Do you have anything with you which would
10 indicate the date of the burglary?
11   A.   No. What I have in the office, not with
12 me. But I send a copy to my lawyer.
13   Q.   Okay. But just -- we don't have to go
14 into details of it. If the police report says that
15 it occurred on or about October 8, 2009, would you
16 agree with that?
17   A.   Yeah. Maybe happened a day or three day
18 or four day after -- before, I don't know.
19   Q.   Okay.
20   A.   I don't know exactly the date. I only
21 know the police reported.
22   Q.   How often -- I understand that they
23 vacated the property some time June 2009?
24   A.   Right.
25   Q.   You know Miss Peña?

Page 14

1    A.  Right.
2    Q.  How often would you visit the property,
3  after they vacated the property?
4    A.  Not often, because it's very far away from
5  my office.  It's like you have to go pretty far to
6  see the place.  If it was close to me, I will find
7  it much more easy.  But you had to go complete to
8  the end of the shopping center to find out who is
9  there and who is not there.
10   Q.  Do you remember -- well, let me ask you
11 this:  How did you find the property burglarized?
12   A.  Well, we walk around to find -- if every
13 once in awhile we go around to find if everything's
14 okay.
15   Q.  Okay.
16   A.  And we find that the door was broken and
17 the place was vandalized.
18   Q.  Okay.  Do you remember -- do you remember
19 the time you visited the property, before the time
20 that you found the property burglarized?
21   A.  Maybe two weeks before.  Maybe two weeks
22 before.  Maybe.  I don't know.
23   Q.  Generally would you visit the properties,
24 that you manage -- strike that.
25       Generally, would you visit this property

Page 15

1  every two weeks?
2       MR. RATLIFF:  Form.
3    A.  It's possible.
4  BY MR. PATAKY:
5    Q.  What's the longest -- during the period
6  that the property was vacant, what's the longest you
7  went without visiting the property?
8    A.  I would say almost every -- once a week,
9  once every two weeks.  Once a week, once every two
10 weeks.  Depends.
11   Q.  Did you ever have a period of time where
12 you went more than two weeks without visiting the
13 property?
14   A.  It's possible.  I don't know.  It's
15 possible.  I don't know.
16   Q.  Okay.  During the -- after Miss Pena left,
17 did you show the property to any potential tenants?
18   A.  Yeah, we showed to some to other people
19 because I have an agent who rent the place.  And we
20 show -- I say we show once, I think, to a restaurant
21 maybe, yeah.
22   Q.  Do you remember in particular or are you
23 not sure?
24   A.  I don't remember the guy, but I remember
25 that we showed the place.

Page 16

1    Q.  Who is the agent that JJD Associates
2  retained to show the property?
3    A.  We have one.  His name is Steve -- Steve.
4  I have his phone number.  I don't remember his name.
5    Q.  Do you know his phone number?
6    A.  (Indicating)--
7    Q.  Oh, sure okay.  We can go back to it.
8        While the -- while Miss Peña -- after
9  Miss Pena left the property, after it was not the
10 Cohiba Restaurant anymore, was it used for anything
11 for JJD Associates of Palm Beach before the
12 burglary?
13       MR. RATLIFF:  Form.
14       MR. PATAKY:  That's a poor question.
15 BY MR. PATAKY:
16   Q.  Did JJD Associates of Palm Beach use the
17 building as its office at any time --
18   A.  No.
19   Q.  -- after the time Miss Peña left?
20   A.  Never.
21   Q.  Did JJD Associates of Palm Beach use that
22 building to store anything?
23   A.  Never.
24   Q.  Other than the agent maybe showing it --
25 showing it to a potential tenant, did any other

Page 17

1  activity occur at that building after Miss Peña left
2  and before the burglary?
3        MR. RATLIFF:  Form.
4    A.  No, it was always closed.  Never.
5        Here's the number of Steve.
6  BY MR. PATAKY:
7    Q.  You're showing me -- it says, "Steve
8  agent," but I assume agent is not his last name,
9  right?
10   A.  No.
11   Q.  And it says the number (561)832-7880.
12   A.  Thank you.
13   Q.  All right.  Is Steve the agent who's
14 responsible for renting out all the JJD Associates
15 properties?
16   A.  No, not responsible.  Sometimes he rent --
17 he rent many, many properties.  Sometimes -- I know
18 the guy.  Sometimes if he has a tenant, he calls me.
19 He's not responsible to handle the property.
20   Q.  Do you know if Steve works for a bigger
21 company or he's on his own?
22   A.  No.
23   Q.  You have to say it outloud.
24   A.  If what?
25   Q.  Does he work for a bigger company --

5 (Pages 14 - 17)

Page 18

1    A.  I don't know.
2    Q.  -- or is he on his own?
3    A.  I don't know.  I cannot say that.  I don't
4  know.
5    Q.  This building, 7440 Lake Worth Road, it's
6  not a building that's subdivided for multiple
7  tenants, right?
8    A.  No, it's a building itself.
9    Q.  When you rent out the building, or --
10  strike that.
11       In terms of JJD's use for the building or
12  a tenant's use of the building, they're either
13  occupying 100 percent of the building or none of the
14  building?
15    A.  A hundred percent, a hundred percent.
16    Q.  My question is it's either a hundred
17  percent or nothing?
18    A.  Exactly.  It's a small place.  It couldn't
19  be subdivided.
20    Q.  Do you remember when you purchased your
21  policy with American Empire Insurance Company the
22  first time?
23    A.  I think we do it once a year every
24  December.  Every December we renew the policy.
25    Q.  Okay.  Do you remember when you first got

Page 19

1  the policy?
2    A.  What do you mean?
3    Q.  Were you the person who bought the
4  insurance the first time for the buildings owned by
5  JJD Associates?
6    A.  Yeah, we get quotation from different
7  agent.  And then we buy the best service.  We get
8  the policy from the agent, yeah, once a year.
9    Q.  Do you remember when you first got the
10  policy from American Empire Surplus Lines?
11    A.  No.
12    Q.  Who occupied the building before Cohiba?
13    A.  It used to be another restaurant.  I don't
14  remember.  Used to be another restaurant.
15    Q.  Is this the first time -- I understand now
16  it's rented to Casino Magic.
17    A.  Right.
18    Q.  Is this the first time that the building
19  is not being used as a restaurant?
20    A.  Yeah.  Yeah, yeah.
21    Q.  As far as you know?
22    A.  As far as I know.  I don't know before,
23  before me.  The way that I know, yes.  What happened
24  way before, I don't know.
25    Q.  Since you've been at JJD Associates --

Page 20

1    A.  Restaurant.
2    Q.  This is the first time it's not being used
3  as a restaurant?
4    A.  Exactly correct, yeah, yeah.
5    Q.  Did you always collect the rent at 7440
6  Lake Worth Road in person?
7       MR. RATLIFF:  Form.
8    A.  No, used to bring a check to the office.
9  BY MR. PATAKY:
10    Q.  Did they pay the May -- I'm sorry.
11       Did Irma Pena and her husband pay the rent
12  for May 2009?
13    A.  I don't remember.
14    Q.  Okay.  Do you know when the last rental
15  payment they made was?
16    A.  I don't know.  They must pay the last time
17  before they left, I assume.  I have to ask the
18  secretary, I don't know.
19    Q.  All right.  If I asked you to provide that
20  information, would you have it?
21    A.  Yeah, sure, of course, they would have it
22  and we will fax it to you.
23    Q.  Regardless of whether they paid or not, as
24  of June 2009, they were no longer in the building?
25    A.  Correct, yeah.

Page 21

1    Q.  Do you know if Cohiba Restaurant, Irma
2  Peña and her husband, if they had ever subleased the
3  building?
4    A.  No, they didn't sublease, no.
5    Q.  I know that JJD has several buildings --
6    A.  Right.
7    Q.  -- that were also insured with American
8  Empire Surplus Lines Insurance Company.
9    A.  All the buildings.
10    Q.  Were all of the JJD Associates' building
11  insured with American Empire Surplus Lines?
12    A.  Yeah, the complete center.
13    Q.  It's a shopping center with several
14  buildings, right?
15    A.  Right, correct.
16    Q.  And is it your understanding that each
17  building had a separate limit of insurance?
18       MR. RATLIFF:  Form.  Don't guess.
19    A.  No.
20  BY MR. PATAKY:
21    Q.  Do you understand?
22    A.  It was one insurance for everybody.
23    Q.  I understand.  One insurance policy for
24  all the buildings?
25    A.  For all the buildings.

6 (Pages 18 - 21)

Page 22

1      MR. PATAKY:  I don't have any other
2   questions.  See how fast that was?
3      THE WITNESS:  Thank you.  He scare me.  He
4   tell me two hours.
5      MR. PATAKY:  No.  Maybe some other guy.
6      MR. RATLIFF:  I said maybe two hours.
7      MR. PATAKY:  Okay.  Your attorney can ask
8   some questions if he likes.
9      MR. RATLIFF:  We'll read.
10     VIDEOGRAPHER:  Off the record, 11:29 a.m.
11     (Thereupon, the taking of the deposition
12   was concluded at 11:29 a.m.)
13
14
15
16
17
18
19
20
21
22
23
24
25

Page 24

1            ERRATA SHEET
2  JJD VS. AMERICAN EMPIRE
   Deponent:  DAVID EZAGUI
3  Date of :  May 23, 2011
4
5  PAGE  LINE     REMARKS
6  _____
7  _____
8  _____
9  _____
10 _____
11 _____
12 _____
13 _____
14 _____
15 _____
16 _____
17 _____
18 _____
19 _____
20
21     _____
22          Signature of Witness
   _____
23 (Notary Public)
24 Dated this _____ day of _____, _____.
   My Commission Expires: _____
25

Page 23

1            AFFIDAVIT
2
   STATE OF FLORIDA        )
3  COUNTY OF _____ )
4
      I, _____, being
5  first duly sworn, do hereby acknowledge that I
   did read a true and certified copy of my
6  deposition which was taken in the case of JJD
   VS. AMERICAN EMPIRE, taken on the 23 day of
7  May, 2011, and the corrections I desire to make
   are as indicated on the attached Errata Sheet.
8
9         _____
           (Deponent)
10  + + + + + + + + + + + + + + + + + + +
11           CERTIFICATE
12
13 STATE OF FLORIDA        )
   COUNTY OF _____ )
14
15    Before me personally appeared
16 _____,
   to me well known / known to me to be the person
17 described in and who executed the foregoing
   instrument and acknowledged to and before me
18 that he executed the said instrument in the
   capacity and for the purpose therein expressed.
19
20    Witness my hand and official seal, this
   _____ day of _____, _____.
21
22
23       _____
              (Notary Public)
24
   My Commission Expires:
25

Page 25

1
2       CERTIFICATE OF OATH
3
4  STATE OF FLORIDA    )
5  COUNTY OF BROWARD )
6
7      I, the undersigned authority, certify
8  that DAVID EZAGUI personally appeared before me
9  and was duly sworn.
10     WITNESS my hand and official seal this
11 28th day of May, 2011.
12
13
14
15     KIMBERLY A. FONTALVO, RPR
   Notary Public, State of Florida
16 My Commission No. DD0661766
   Expires: 7/12/2011
17
18
19
20
21
22
23
24
25

7 (Pages 22 - 25)

Veritext Florida Reporting Co.

Page 26

```
 1
 2              CERTIFICATE
 3
 4  STATE OF FLORIDA  )
 5  COUNTY OF BROWARD )
 6
 7       I, KIMBERLY A. FONTALVO, RPR, do hereby
 8  certify that I was authorized to and did
 9  stenographically report the foregoing deposition
10  of DAVID EZAGUI; that a review of the transcript
11  was requested; and that the transcript is a true
12  record of my stenographic notes.
13       I FURTHER CERTIFY that I am not a
14  relative, employee, attorney, or counsel of any
15  of the parties, nor am I a relative or employee
16  of any of the parties' attorney or counsel
17  connected with the action, nor am I financially
18  interested in the action.
19       Dated this 28th day of May, 2011.
20
            _____
21
            KIMBERLY A. FONTALVO, RPR
22          My Commission No. DD0661766
            Expires: 7/12/2011
23
24
25
```

Page 27

```
 1
 2          VERITEXT FLORIDA, LLC
            19 W. FLAGLER, STE. 1020
 3          MIAMI, FL  33130
            305-376-8800
 4
 5  DAVID EZAGUI
    KNOERR & RATLIFF LAW GROUP, P.A.
 6  9900 W. Sample Road, Ste. 330
    Coral Springs, FL  33065
 7  BY:  RYAN C. RATLIFF, ESQ.
 8          May 28th, 2011
 9  RE:  JJD VS. AMERICAN EMPIRE
    AVAILABLE FOR READING UNTIL:  30 days
10
    DAVID EZAGUI:
11
            This letter is to advise you that the
12  transcript of your deposition is available for
    reading and signing.
13
            PLEASE CALL THE ABOVE NUMBER TO MAKE AN
14  APPOINTMENT to come to the Veritext office
    closest to you to read and sign the transcript.
15  Our office hours are 8:30 a.m. to 4:30 p.m.,
    Monday through Friday.
16          In the event other arrangements are
    made, please send us a notarized list of any and
17  all corrections and/or changes, noting page and
    line numbers, and the reason for such changes,
18  so that we can furnish respective counsel with a
    copy.
19          If the reading and signing has not been
    completed prior to the above-referenced date, we
20  shall concluded that you have waived the reading
    and signing of the deposition transcript.
21          Your prompt attention to this matter is
    appreciated.
22
23          KIMBERLY A. FONTALVO, RPR, CLNR
24  cc:  (All counsel)
25
```

8 (Pages 26 - 27)

[& - closest]                                                         Page 28

| & | |
|---|---|
| **&** 2:3 27:5 | |

| **1** | |
|---|---|
| **100** 2:8 18:13 | |
| **1020** 27:2 | |
| **1100** 2:8 | |
| **11:00** 1:11 | |
| **11:04** 3:10 | |
| **11:29** 1:11 22:10,12 | |
| **12** 2:20 | |
| **19** 27:2 | |

| **2** | |
|---|---|
| **2009** 9:13,14 11:3,4 | |
| 11:18,24 12:25 | |
| 13:15,23 20:12,24 | |
| **2011** 1:11 3:9 8:8,25 | |
| 10:25 11:23 23:7 | |
| 24:3 25:11 26:19 | |
| 27:8 | |
| **2255** 1:10 | |
| **23** 1:11 3:9 23:6 | |
| 24:3 | |
| **28th** 25:11 26:19 | |
| 27:8 | |

| **3** | |
|---|---|
| **3** 2:17 | |
| **30** 27:9 | |
| **305-376-8800** 27:3 | |
| **330** 2:4 27:6 | |
| **33065** 2:4 27:6 | |
| **33130** 27:3 | |
| **33394** 2:8 | |
| **33467** 5:11 | |
| **3rd** 2:8 | |

| **4** | |
|---|---|
| **4:30** 27:15 | |

| **5** | |
|---|---|
| **561** 17:11 | |

| **7** | |
|---|---|
| **7/12/2011** 25:16 | |
| 26:22 | |

**7336** 5:10
**7440** 7:20,23 12:14
  18:5 20:5

| **8** | |
|---|---|
| **8** 12:25 13:15 | |
| **80247** 1:3 | |
| **832-7880** 17:11 | |
| **8:30** 27:15 | |

| **9** | |
|---|---|
| **9900** 2:4 27:6 | |
| **9:11** 1:3 | |

| **a** | |
|---|---|
| **a.m.** 1:11,11 3:10 | |
| 22:10,12 27:15 | |
| **able** 4:10 | |
| **acknowledge** 23:5 | |
| **acknowledged** | |
| 23:17 | |
| **action** 26:17,18 | |
| **activity** 17:1 | |
| **address** 5:9 7:20 | |
| **admissions** 10:10 | |
| 12:4 | |
| **advise** 27:11 | |
| **affidavit** 23:1 | |
| **age** 3:21 | |
| **agent** 15:19 16:1,24 | |
| 17:8,8,13 19:7,8 | |
| **ago** 8:4,6,7 | |
| **agree** 13:16 | |
| **ahead** 11:16 | |
| **american** 1:7 3:4,14 | |
| 4:1 18:21 19:10 | |
| 21:7,11 23:6 24:2 | |
| 27:9 | |
| **answer** 4:13 | |
| **answering** 4:24,24 | |
| **answers** 5:1 | |
| **anybody** 6:8,16 | |
| **anymore** 16:10 | |
| **appearances** 2:1 | |
| 3:12 | |

**appeared** 23:15
  25:8
**appointment** 27:14
**appreciated** 27:21
**april** 8:8,25
**arcade** 8:12,12
**arrangements** 27:16
**aside** 7:1
**asked** 4:6 20:19
**asking** 4:22,23
**associates** 1:4 3:3
  5:16,18,19,19,20,21
  5:22 6:8 7:2,7,12,17
  7:20 10:21 16:1,11
  16:16,21 17:14 19:5
  19:25 21:10
**assume** 4:23 17:8
  20:17
**attach** 12:1
**attached** 2:23 7:24
  10:9 12:3 23:7
**attention** 27:21
**attorney** 4:4 22:7
  26:14,16
**authority** 25:7
**authorized** 26:8
**available** 27:9,12
**ave** 2:8
**awhile** 14:13

| **b** | |
|---|---|
| **b** 9:5 10:9 | |
| **back** 7:6 16:7 | |
| **beach** 1:2,4 3:3 5:19 | |
| 5:20,22,23 7:2 | |
| 10:21 16:11,16,21 | |
| **began** 9:1 | |
| **behalf** 2:2,6 3:13,16 | |
| **best** 7:4,15 19:7 | |
| **beyond** 4:9 | |
| **bigger** 17:20,25 | |
| **boca** 1:10 | |
| **bought** 19:3 | |
| **bring** 20:8 | |

**broken** 14:16
**broward** 25:5 26:5
**building** 7:23,24,24
  8:1 9:1,8,9,9,12
  16:17,22 17:1 18:5
  18:6,8,9,11,12,13,14
  19:12,18 20:24 21:3
  21:10,17
**buildings** 7:19 19:4
  21:5,9,14,24,25
**burglarized** 14:11
  14:20
**burglary** 12:12
  13:10 16:12 17:2
**burnett** 2:7
**business** 5:9 7:7,13
  7:16 8:19
**buy** 19:7

| **c** | |
|---|---|
| **c** 2:5 6:21 9:5 27:7 | |
| **call** 11:14 27:13 | |
| **called** 12:17 | |
| **calls** 17:18 | |
| **capacity** 23:18 | |
| **case** 23:6 | |
| **casino** 8:20,21,22,23 | |
| 8:25 9:8 19:16 | |
| **cause** 1:20 | |
| **cc** 27:24 | |
| **center** 12:2 14:8 | |
| 21:12,13 | |
| **certificate** 23:11 | |
| 25:2 26:2 | |
| **certified** 1:17 23:5 | |
| **certify** 25:7 26:8,13 | |
| **changes** 27:17,17 | |
| **check** 20:8 | |
| **clean** 6:23 | |
| **cleaning** 6:18 | |
| **clnr** 27:23 | |
| **close** 14:6 | |
| **closed** 17:4 | |
| **closest** 27:14 | |

Page 29                                                                    [cohiba - husband]

cohiba  9:3,5,7,11,22
  9:23 16:10 19:12
  21:1
collect  6:5 11:10
  20:5
come  27:14
commission  23:24
  24:24 25:16 26:22
communicate  11:5
company  1:7 3:5,15
  4:2 5:12,14 10:15
  17:21,25 18:21 21:8
complete  14:7 21:12
completed  27:19
completely  7:25
  12:17
concluded  22:12
  27:20
connected  26:17
conversations  4:21
copies  10:8
copy  10:6 13:6,12
  23:5 27:18
coral  2:4 27:6
correct  5:23 7:9,11
  7:22,22 8:10 9:25
  10:2,5,23 11:21,25
  12:25 20:4,25 21:15
corrections  23:7
  27:17
counsel  3:11 26:14
  26:16 27:18,24
county  23:3,13 25:5
  26:5
couple  4:2
course  20:21
court  1:1 3:7 12:7
currently  8:1
cv  1:3

**d**

d  2:15
date  11:12 12:18,21
  12:23,24 13:10,20
  24:3 27:19

dated  24:24 26:19
david  1:14 3:2,19
  5:6 24:2 25:8 26:10
  27:5,10
day  9:20 13:17,17
  13:18 23:6,20 24:24
  25:11 26:19
days  27:9
dd0661766  25:16
  26:22
december  18:24,24
defendant  1:8 2:6
defendant's  12:5,8
defense  2:18
degenerate  4:21
depends  15:10
deponent  23:9 24:2
deposition  1:14,19
  3:2 12:5 22:11 23:6
  26:9 27:12,20
described  23:17
desire  23:7
details  13:14
different  19:6
direct  2:17 3:23
district  1:1,1
division  1:2
document  12:6
doing  5:4
door  14:16
duly  3:21 23:5 25:9

**e**

e  2:15 5:8 6:11,21
easy  14:7
either  18:12,16
empire  1:7 3:4,14
  4:1 18:21 19:10
  21:8,11 23:6 24:2
  27:9
employee  26:14,15
empty  9:10
entity  5:18
errata  23:7 24:1

esq  2:5,9 27:7
event  27:16
everybody  21:22
everything's  14:13
exactly  12:22 13:20
  18:18 20:4
examination  2:16
  3:23
executed  23:17,18
exhibit  2:20,23 12:5
  12:8
exhibits  2:18
expires  23:24 24:24
  25:16 26:22
expressed  23:18
extent  4:5
ezagui  1:14 3:2,19
  3:25 5:6,7,9 24:2
  25:8 26:10 27:5,10

**f**

far  14:4,5 19:21,22
fast  22:2
fax  20:22
felix  6:19,20,25
filed  1:19 3:20
financially  26:17
find  11:9,10,11
  12:16 14:6,8,11,12
  14:13,16
fine  4:18,19 5:3
finish  4:25
first  3:21 6:12,13
  18:22,25 19:4,9,15
  19:18 20:2 23:5
fl  2:4,8 27:3,6
flagler  27:2
florida  1:1,10,18
  5:10 23:2,13 25:4
  25:15 26:4 27:2
follows  3:22
fontalvo  1:16 3:7
  25:15 26:7,21 27:23
food  8:16

foregoing  23:17
  26:9
form  15:2 16:13
  17:3 20:7 21:18
fort  2:8
found  14:20
four  13:18
fowler  2:7
fred  2:12 3:6
friday  27:15
full  13:6
furnish  27:18
further  26:13

**g**

g  5:8
games  8:14,15
generally  14:23,25
give  4:2,25
glades  1:10
go  7:5 11:15 13:13
  14:5,7,13 16:7
ground  4:2
group  2:3 27:5
guess  21:18
guy  6:18 15:24
  17:18 22:5

**h**

h  6:21 9:5
hand  23:20 25:10
handle  17:19
handyman  6:22,23
happened  11:8
  13:17 19:23
happening  4:20
head  4:10,12
hereto  2:23
heretofore  3:20
hours  22:4,6 27:15
huh  4:14,15
hundred  18:15,15
  18:16
husband  9:25 10:1
  20:11 21:2

[identification - person]                                      Page 30

**i**

identification  12:7
inartfully  10:16
indicate  13:10
indicated  12:24 23:7
indicates  12:21
indicating  16:6
information  20:20
instrument  23:17,18
insurance  1:7 3:4,14
  4:1 18:21 19:4 21:8
  21:17,22,23
insured  21:7,11
interested  26:18
irma  9:24 10:22
  20:11 21:1

**j**

january  10:25 11:23
jjd  1:4 3:3,17 5:16
  5:18,19,19,20,21,22
  5:24 6:2,3,4,8,17
  7:2,7,12,16,19
  10:15,21 16:1,11,16
  16:21 17:14 19:5,25
  21:5,10 23:6 24:2
  27:9
jjd's  18:11
july  9:13,15
june  9:13,14,15,17
  9:18,19,20 11:3,4
  11:18,24 13:23
  20:24

**k**

kim  3:7
kimberly  1:16 25:15
  26:7,21 27:23
kind  7:12
knoerr  2:3 27:5
know  4:6,9,22 7:15
  12:15 13:18,20,21
  13:25 14:22 15:14
  15:15 16:5 17:17,20
  18:1,3,4 19:21,22

19:22,23,24 20:14
20:16,18 21:1,5
known  23:16,16

**l**

l  6:11
lake  5:10,10 7:20,23
  12:14 18:5 20:6
large  1:18
lauderdale  2:8
law  2:3 27:5
lawful  3:21
lawyer  10:7 13:12
lease  2:20 10:3,6,13
  10:19,20,24 11:6,22
  12:2
left  11:9 15:16 16:9
  16:19 17:1 20:17
letter  27:11
likes  22:8
limit  21:17
limited  3:3 10:21
line  24:5 27:17
lines  1:7 3:4,14 4:1
  19:10 21:8,11
list  27:16
listed  5:22
livenote  1:17
llc  27:2
longer  11:19,23
  20:24
longest  15:5,6
look  13:4
looked  5:18,21
looking  6:24 10:18
lyne  6:11,25

**m**

machine  8:13
magic  8:22,23,25
  9:8 19:16
manage  5:24 6:5
  14:24
management  5:23
  6:1

manager  6:6,7
marked  12:7
matter  3:3 27:21
mean  19:2
miami  27:3
mid  9:19
monday  27:15
month  8:4,6,7
morris  2:9 3:13,25
multiple  18:6

**n**

n  2:15 6:11,21
name  3:6 5:5,15
  6:10,12,12,13,14,19
  8:18 16:3,4 17:8
name's  3:25
named  3:20
need  11:14
never  11:7 16:20,23
  17:4
nodding  4:10
notarized  27:16
notary  1:18 23:23
  24:23 25:15
notes  26:12
notice  1:19 3:20
noting  27:11
number  16:4,5 17:5
  17:11 27:13
numbers  27:17

**o**

o  9:5
oath  3:22 25:2
occupied  8:2,3,9,19
  9:2,8,8,9 19:12
occupy  9:1
occupying  8:11 9:11
  11:2,17 18:13
occur  12:12 17:1
occurred  13:15
october  12:25 13:15
office  13:11 14:5
  16:17 20:8 27:14,15

officer  5:22
official  23:20 25:10
oh  16:7
okay  4:18 5:3 6:16
  11:15,15 12:3,12,20
  13:2,7,13,19 14:14
  14:15,18 15:16 16:7
  18:25 20:14 22:7
once  14:13 15:8,9,9
  15:9,20 18:23 19:8
operated  9:23
operations  7:16
outloud  17:23
owned  19:4
owns  7:20

**p**

p.a.  2:3,7 27:5
p.m.  27:15
page  2:16,19 24:5
  27:17
pages  12:2
paid  20:23
palm  1:2,4 3:3 5:19
  5:20,21,23 7:2
  10:21 16:11,16,21
part  5:25
particular  15:22
parties  26:15,16
pataky  2:9,17 3:13
  3:13,24,25 10:11,12
  12:1,9,11 13:7,8
  15:4 16:14,15 17:6
  20:9 21:20 22:1,5,7
pay  20:10,11,16
payment  20:15
pena  10:14,22 15:16
  16:9 20:11
people  15:18
percent  18:13,15,15
  18:17
period  15:5,11
person  5:1 7:4,15
  19:3 20:6 23:16

Page 31                                    [personally - sworn]

personally  23:15
  25:8
peña  9:24 13:25
  16:8,19 17:1 21:2
phone  16:4,5
phrased  10:17
place  6:5,24 8:12
  12:17 14:6,17 15:19
  15:25 18:18
plaintiff  1:5 2:2
please  3:11 27:13,16
police  12:16,18,19
  12:21,24 13:1,14,21
policy  18:21,24 19:1
  19:8,10 21:23
poor  16:14
position  6:4
possible  15:3,14,15
potential  15:17
  16:25
premises  11:9,11
present  2:12
pretty  14:5
prior  8:18,25 27:19
probably  4:3
professional  1:17
prompt  27:21
properties  14:23
  17:15,17
property  7:8,10
  11:3,18,19,20,23
  12:13,13 13:23 14:2
  14:3,11,19,20,25
  15:6,7,13,17 16:2,9
  17:19
provide  20:19
public  1:18 23:23
  24:23 25:15
purchased  18:20
purpose  23:18
pursuant  1:19

q

question  4:5 5:17
  16:14 18:16

questions  22:2,8
quotation  19:6

r

ratliff  2:3,5 3:16,16
  10:9 13:6 15:2
  16:13 17:3 20:7
  21:18 22:6,9 27:5,7
raton  1:10
read  22:9 23:5 27:14
reading  27:9,12,19
  27:20
reason  27:17
record  3:1,12 5:5
  22:10 26:12
referenced  27:19
referred  12:6
regardless  20:23
registered  1:16
relative  26:14,15
remarks  24:5
remember  6:15 9:15
  9:20 11:12 12:18
  13:3 14:10,18,18
  15:22,24,24 16:4
  18:20,25 19:9,14
  20:13
renew  18:24
rent  6:5,6 7:10
  11:10 15:19 17:16
  17:17 18:9 20:5,11
rental  20:14
rented  19:16
renting  17:14
repair  6:23
repairs  6:19,19
rephrase  4:6
report  12:19,21,24
  13:1,14 26:9
reported  13:21
reporter  1:17,17
  2:23 3:7 12:7
reports  12:15
represent  4:1

request  12:4
requested  26:11
respective  27:18
response  12:4
responsible  17:14
  17:16,19
restaurant  9:3,3,5,7
  9:11,22,23 15:20
  16:10 19:13,14,19
  20:1,3 21:1
retained  2:23 16:2
review  26:10
right  4:8 7:21 8:15
  10:4,25 13:24 14:1
  17:9,13 18:7 19:17
  20:19 21:6,14,15
road  1:10 2:4 5:10
  7:20,23 12:14 18:5
  20:6 27:6
rpr  25:15 26:7,21
  27:23
rules  4:3
ryan  2:5 3:16 27:7

s

s  6:21
sample  2:4 27:6
sanchez  6:21,25
saw  5:17 10:11
saying  5:1
says  13:14 17:7,11
scare  22:3
seal  23:20 25:10
secretary  6:9 20:18
secretary's  6:10
see  4:10 11:19 14:6
  22:2
send  13:12 27:16
separate  7:25 21:17
service  19:7
serving  8:16
set  5:2
shaking  4:12
sheet  23:7 24:1

shopping  12:1 14:8
  21:13
show  15:17,20,20
  16:2
showed  15:18,25
showing  16:24,25
  17:7
side  4:13,13
sign  27:14
signature  24:22
signing  27:12,19,20
small  6:19 18:18
sorry  6:15 8:5 10:21
  11:15 20:10
southeast  2:8
southern  1:1
spell  5:7
spoke  4:4
springs  2:4 27:6
state  1:18 3:11 5:5
  23:2,13 25:4,15
  26:4
states  1:1
ste  2:4,8 27:2,6
stenographic  26:12
stenographically
  26:9
steve  16:3,3 17:5,7
  17:13,20
stop  9:11
stopped  11:2,17
store  16:22
strike  7:5 14:24
  18:10
subdivided  18:6,19
sublease  21:4
subleased  21:2
supposed  10:24
sure  4:3 12:9 15:23
  16:7 20:21
surplus  1:7 3:4,14
  4:1 19:10 21:8,11
sworn  3:22 23:5
  25:9

[take - z]                                                      Page 32

**t**

take   10:25 11:14
   13:4
taken   1:16 23:6,6
takes   4:14
talk   7:4,16
talking   9:4 12:13
tell   4:20 22:4
tenant   16:25 17:18
tenant's   18:12
tenants   15:17 18:7
tend   4:21
term   10:24
terminating   11:6
terms   18:11
testified   3:22
thank   17:12 22:3
thing   4:19
things   4:3,12,21
think   8:22 9:13 10:7
   10:8 15:20 18:23
thought   12:23
three   13:17
time   3:9,11 4:25 8:8
   9:1,7 11:18 13:23
   14:19,19 15:11
   16:17,19 18:22 19:4
   19:15,18 20:2,16
today   3:9
told   12:23
transcript   4:11
   26:10,11 27:12,14
   27:20
true   23:5 26:11
try   4:6,13 6:5
two   7:1 12:2 14:21
   14:21 15:1,9,9,12
   22:4,6

**u**

u   5:8
uh   4:14,15
undersigned   25:7
understand   4:5,7,12
   4:17 7:19 9:22

10:16 13:22 19:15
   21:21,23
understanding
   12:20 21:16
united   1:1
use   8:1 16:16,21
   18:11,12

**v**

vacant   11:11 15:6
vacated   13:23 14:3
vandalized   12:17
   14:17
veitch   2:12 3:6
verbally   4:14
veritext   3:7,8 27:2
   27:14
versus   3:4
video   3:1,2 4:9 8:14
   8:15
videographer   2:12
   3:1,6 22:10
videotaped   1:14
visit   14:2,23,25
visited   14:19
visiting   15:7,12
vs   1:6 23:6 24:2 27:9

**w**

w   2:4 27:2,6
waived   27:20
walk   14:12
want   4:2 13:4
way   4:7 19:23,24
week   11:13 15:8,9
weeks   14:21,21 15:1
   15:9,10,12
went   11:10,19 12:16
   15:7,12
west   1:2
westmount   5:23,24
   5:25 6:1
white   2:7
witness   3:20 22:3
   23:20 24:22 25:10

woman   9:23
work   5:12,13,14 6:1
   6:2,8,16 7:2 17:25
works   17:20
worth   5:10,10 7:20
   7:23 12:14 18:5
   20:6

**x**

x   2:15
xxxx   1:3

**y**

y   6:11
yeah   4:16,16 5:25
   6:18 7:18,22 8:10
   8:22,24 9:6,19,25
   10:5 11:1,1,4,4,21
   13:5,17 15:18,21
   19:6,8,20,20,20
   20:4,4,21,25 21:12
year   18:23 19:8

**z**

z   5:8 6:21

## SHOPPING CENTER LEASE

THIS LEASE, made between J.J.D. Associates of Palm Beach Ltd., located at 7336 Lake Worth Road, Lake Worth, Florida, 33467 ("LESSOR"), and Irma Pena, located at 7440 Lake Worth Road, Lake Worth, Fl. 33467 ("LESSEE").

## WITNESSETH:

In consideration of the covenants herein contained, on the part of the LESSEE to be kept and performed, LESSOR herein leases to LESSEE the "Demised Premises" being _7440_ Lake Worth Road, Lake Worth, FL. 33467 as depicted on attached Exhibit "B" and located within Shopping Center know as The Market Place Shopping Center at Lake Worth Road, Lake Worth, FL.

TO HAVE AND TO HOLD the same unto LESSEE on the following terms and conditions:

1.   "Commencement Date" shall mean January 17, 2006.

2.   "Minimum Rent" shall begin on June 1, 2006.

3.   "Lease Term" shall mean 60 months from the first of the month of the Commencement Date.

4.   "Permitted Use" shall mean use of the Demised Premises as a Spanish Restaurant. Not to be operated as a "Diner".

5.   "Minimum Rent" shall means $4700.00 for rent, $300.00 for CAM, plus applicable sales tax $325.00. Total monthly rent is   $5325.00 The minimum rent shall begin on June 1, 2006. With a minimum of 3% increase each year.

6..   "Deposit". Shall mean $15,000.00 plus sales tax $975.00 which is 3 months rent plus sales tax equals to 15,975.00.( Due at signing).

7.   "The Standard Provisions", attached hereto as Exhibit "A", are incorporated herein by this reference.

8.   Tenant must obtain liability an general  insurance and keep it current.

9.   Tenant will obtain all permits and any other license's to open and operate the restaurant.

10.   Lessee agrees to accept the Demised Premises in "AS IS" condition.

11.   "Alarms".  Lessee agrees that all fire and police alarm systems they install are tenant's responsibility.

12.   "Option to Renew". So long as Lessee is not in default of the Lease, Lessee is granted TWO (2) options of a FIVE (5) year lease.  Lessee agrees to give Lessor written notice if Lessee does not intend to renew its lease at least 6 months (180) days prior to the expiration of the initial lease term.  The same written notice shall be given before any option commencement date if Lessee does not wish to renew the Lease.

13.   Lessee shall obtain a maintenance contract for the air conditioners.

14.   Lessor's signing will be by the Landlord.

15.   Lessee will obtain an exterminator contract.



EXHIBIT

A

Signed in the presence of:

_____

Lessor: J.J.D. Associates of Palm Beach, Ltd.

By _____

Date _____

Signed in the presence of:

_____

Lessee:

By _____

Date _____

IN THE CIRCUIT COURT OF THE 15TH
JUDICIAL CIRCUIT IN AND FOR
PALM BEACH COUNTY, FLORIDA

JJD ASSOCIATES OF PALM BEACH, LTD.,

        Plaintiff,

vs.

AMERICAN EMPIRE SURPLUS
LINES INSURANCE COMPANY,

        Defendant.

_____/



CASE NO.: 50 2011 CA 001509 XXXX MB

COPY
RECEIVED FOR FILING
JAN 28 2011
SHARON R. BOCK
CLERK & COMPTROLLER
CIRCUIT CIVIL DIVISION

## COMPLAINT

The Plaintiff, JJD ASSOCIATES OF PALM BEACH, LTD., by and through the undersigned attorney, sues the Defendant, AMERICAN EMPIRE SURPLUS LINES INSURANCE COMPANY, and in support thereof states as follows:

1.    That this is an action for damages of greater than FIFTEEN THOUSAND DOLLARS ($15,000.00), exclusive of interest, attorney's fees and costs, and is otherwise within the jurisdictional limits of this Court.

2.    That at all times material hereto, the Defendant, AMERICAN EMPIRE SURPLUS LINES INSURANCE COMPANY, was and is an insurance company authorized to do business in the State of Florida, and doing business in Palm Beach County, Florida.

3.    That at all times material hereto, the Plaintiff, JJD ASSOCIATES OF PALM BEACH, LTD., was and is a limited partnership doing business in Palm Beach County, Florida, and is otherwise *sui juris*.

4.    That at all times material hereto, Plaintiff and Defendant had a policy of





EXHIBIT
3

KNOERR RATLIFF
LAW GROUP, P.A. 9900 W. Sample Road  |  Suite 330  |  Coral Springs, FL 33065  |  office: 954.302.8700  |  fax: 954.302.8702  |  www.krig.net

insurance, Policy No. 8 CP 2 44 29 which afforded various types of coverage including coverage for burglary and vandalism to the insured property for the property located at 7440 Lake Worth Road, Lake Worth, FL 33467.

5.      On or about October 8, 2009, the above described property was damaged as a result of burglary and vandalism.

6.      As a result of this incident, the Plaintiff has suffered damages to the premises as well as loss of use of the property.

7.      Plaintiff has furnished the Defendant with timely notice of the loss, proof of claim and have otherwise performed all conditions precedent to recover under the policy and under the applicable Florida Statutes, but the Defendant has refused and continues to refuse to pay any or the Plaintiff's entire claim.

8.      A certified copy of the policy is not in the possession of the Plaintiff, but upon information and belief, is in the possession of the Defendant.

## COUNT I - BREACH OF CONTRACT

Plaintiff re-adopts and re-alleges Paragraphs 1 through 8 above as if fully stated herein, and further allege as follows:

9.      That the Defendant's denial of coverage and refusal to pay the full amount of the claim was contrary to the terms of the policy and/or Florida law, and was a breach of said contract of insurance.

10.     Moreover, based on the actions or inactions of the Defendant, as well as its agents, the Defendant is prevented from denying coverage to the Plaintiff and paying the full amount of the loss sustained.

2



11.     That all conditions precedent to this action have been waived or have occurred.

12.     That as a direct and proximate result of the Defendant's refusal to pay the Plaintiff's claim, the Plaintiff has been required to retain the services of the undersigned attorney to represent and protect the Plaintiff's interests and Plaintiff has become obligated to pay them a reasonable fee for their services in bringing this action.

**WHEREFORE,** the Plaintiff, JJD ASSOCIATES OF PALM BEACH, LTD, demands judgment against the Defendant, AMERICAN EMPIRE SURPLUS LINES INSURANCE COMPANY,  for damages including but not limited to damage to the subject property and its loss of use as a result of the incident that occurred on or about October 8, 2009, costs and interest allowed by law, and reasonable attorney's fees pursuant to Fla.Stat.§627.428 or other Florida law, and the Plaintiff demands mediation pursuant to the terms of the policy and a trial by jury of all issues triable as a matter of right by jury.

**Knoerr Ratliff Law Group**
*Attorneys for Plaintiff*
9900 West Sample Road, Ste. 330
Coral Springs, FL 33065
Telephone: 954.749.3151
Facsimile: 954.749.3890
ryan@krlg.net

Linda M. Knoerr, Esquire
Florida Bar No. 0005363
Ryan C. Ratliff, Esquire
Florida Bar No. 0727261

3



KNOERR RATLIFF
LAW GROUP, P.A.   9900 W. Sample Road  |  Suite 330  |  Coral Springs, FL 33065  |  office: 954.302.8700  |  fax: 954.302.8702  |  www.krlg.net