UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
(WEST PALM BEACH DIVISION)

JJD ASSOCIATES OF PALM BEACH, LTD.,

    Plaintiff,

v.

AMERICAN EMPIRE SURPLUS LINES INSURANCE COMPANY,

    Defendant.

CASE NO.: 9:11-CV-80247-DTKH

**DEFENDANT/COUNTER-PLAINTIFF'S REPLY TO PLAINTIFF/COUNTER- DEFENDANT'S RESPONSE TO DEFENDANT/COUNTER-PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

COMES NOW, the Defendant/Counter-Plaintiff, AMERICAN EMPIRE SURPLUS LINES INSURANCE COMPANY ("American Empire"), by and through its undersigned counsel, and files this its Reply to Plaintiff/Counter-Defendant, JJD ASSOCIATES OF PALM BEACH's ("JJD") Response to American Empire's Motion for Summary Judgment, and in support thereof states as follows:

    1.    American Empire admits that JJD is the owner of seven separate buildings all of which were insured under the subject policy.

    2.    JJD argues that American Empire's Motion for Summary Judgment should be denied for four reasons: that the word "building" as used in the policy means seven separate buildings; that the building in question was not vacant; that because the police report indicates that the underlying loss was a "burglary" the vacancy provision which excludes losses stemming from theft, vandalism and attempted theft does not apply; and lastly, that they have been unable

- 2 -

to take discovery which has been determined permissible [D.E. 36]. Their allegations are either incorrect or insufficient as a matter of law.

3. JJD argues in paragraph 4 of the Response that the definition of "building" cited in the Motion for Summary Judgment somehow creates an ambiguity when it is clearly defined in the vacancy provision.

4. The policy states on Page 11 of Form CP 00 10 06 07:

> 6. Vacancy
> a. Description of Terms
> **(1) As used in this Vacancy Condition, the term building and the term vacant have the meanings set forth in (1)(a) and (1)(b) below;**
> > b. **When this policy is issued to the owner or general lessee of a building, building means the entire building. Such building is vacant unless at least 31% of its total square footage is**:
> > > (i) Rented to a lessee or sub-lessee and used by the lessee or sub-lessee to conduct its customary operations; and/or
> > > (ii) Used by the building owner to conduct customary operations.
>
> (*emphasis added, (1)(a) omitted because it defines building in the event the policy is issued to a tenant*) [D.E. 22, Exhibit C]

5. Despite the allegations of JJD in Paragraph 6 of the Response, the Declarations page does not imply that all seven structures or premises comprise a single building. Rather, the declarations page instructs the reader to "See Form CP1205," i.e., the supplemental declarations pages, which indicate that each premises (1-7) is comprised of one single building. Specifically, the premises in question is described in that supplemental declarations page as, "7440 LAKE WORTH ROAD, LAKE WORTH, FLORIDA 33467 MNC/ONE UNIT BUILDING (RESTAURANT)." JJD conveniently ignores this description of the premises which indicates the normal definition of the word building and that the building's customary use was as a restaurant. [D.E. 22, Exhibit C, Form CP1205 for 7440 Lake Worth Road]

- 2 -

FOWLER WHITE BURNETT P.A. • ONE FINANCIAL PLAZA, SUITE 2100, 100 SOUTHEAST THIRD AVENUE, FORT LAUDERDALE, FL 33394• (954) 377-8100

6. Regardless, the Vacancy Provision clearly sets what a building is when considering the vacancy provision. In the vacancy provision the word is not capitalized, italicized, bolded or in quotations to indicate any reference to an earlier special definition of the word. "Building" is not an ambiguous term and is defined by Merriam-Webster as "a usually roofed and walled structure built for permanent use (as for a dwelling)."

7. Whether 31% of the building at 7440 Lake Worth Road was in use, is not in dispute. The entire building was vacant for more than 60 days prior to the loss at the property. See D.E. 22, Exhibit A (Deposition of David Ezagui) and D.E. 35 (Order Granting Deposition Fees and Costs). The mere act of "frequenting the premises" or keeping a ladder and some tools at or near a location does not indicate customary operations. The building was designated as a restaurant on the policy's supplementary declarations page and was in use a restaurant immediately prior to the vacancy. See D.E. 22 Exhibit A (Deposition of David Ezagui) and D.E. 35 (Order Granting Deposition Fees and Costs)

8. JJD also contends in paragraph 9 of the Response that the underlying event was a burglary and not theft, and is therefore covered by the policy. JJD relies upon the police report but fails to consider the definition of the term "burglary" and further fails to consider that the vacancy provision excludes losses resulting from "attempted theft." A review of Florida's criminal code clearly indicates that the definition of "burglary" does not apply to the instant claim.

9. JJD then argues in Paragraph 12 that they have not had the opportunity to conduct sufficient discovery and that the mere fact that American Empire's Motion for Protective Order was denied in part is an indication that summary judgment is premature. JJD has failed to

- 3 -

Fowler White Burnett P.A. • One Financial Plaza, Suite 2100, 100 Southeast Third Avenue, Fort Lauderdale, FL 33394 • (954) 377-8100

engage in discovery and ignores the Order itself which indicates that the discovery would only be relevant if this Court determined the applicable policy language to be ambiguous.

10.     Similarly, the affidavit of David Ezagui supporting the Response is irrelevant when interpreting the unambiguous terms of the policy as this Court has already agreed that JJD expectations with regard to the policy cannot be considered.

## Memorandum of Law

I. JJD's Reliance on the Declaration Page to Claim Ambiguity is Incorrect and Improper

As explained above, the Declarations page does not imply that all seven structures or premises comprise a single building.  Rather, the declarations page instructs the reader to "See Form CP1205," i.e., the supplemental declarations pages, which indicate that each premises (1-7) is comprised of a  single building.  Specifically, the premises in question is described in that supplemental declarations page as, "7440 LAKE WORTH ROAD, LAKE WORTH, FLORIDA 33467 MNC/ONE UNIT BUILDING (RESTAURANT)."  JJD conveniently ignores this description of the premises.  D.E. 22, Exhibit C, Form CP1205 for 7440 Lake Worth Road.

Florida law has long understood that specific language in the body of an insurance policy trumps any perceived ambiguity in a declarations page.  The declarations pages do not purport to set policy terms.  They simply list an insured's coverage elections and the associated premiums, as well as other information specific to that insured's policy (e.g., the identity of the insurer, the property insured, the insured's agent, etc.). The pages contain no "definitions section." Instead, the policy contains a "Schedule of Forms and Endorsements" which indicates the 18 forms and endorsements which are "applicable to and made part of this insurance policy."  D.E. 22, Exhibit C.

- 4 -

FOWLER WHITE BURNETT P.A. • ONE FINANCIAL PLAZA, SUITE 2100, 100 SOUTHEAST THIRD AVENUE, FORT LAUDERDALE, FL 33394• (954) 377-8100

Nothing in the Declarations Pages (or Policy) indicates that all of the buildings insured actually comprise one single building as alleged by JJD. Many recent court decisions have rejected similar attempts to concoct coverage from purported "ambiguities" in declarations pages. In *Fabricant v. Kemper Indep. Ins. Co.*, 474 F.Supp. 2d 1328 (S.D. Fla. 2007) (Hurley, J.), this Court considered an attempt to divorce the "additional coverages" portion of the plaintiffs' declarations page from the rest of their policy, arguing that, because the "additional coverages" were not included in the Section 1 portion of their declarations page, they were not subject to the hurricane deductible applicable to Section 1. 474 F. Supp.2d, at 1332. Noting its obligation to "conside[r] the policy as a whole and giv[e] effect to each of its provisions," the Court found that the actual policy and endorsements clearly included the "additional coverages" in the application of the hurricane deductible - despite the layout of the declarations page. *Id*. Similarly, regardless of the lack of a definition for the word "building" in the instant declarations page, the vacancy provision at issue clearly uses the standard dictionary definition of the word. In fact, the policy itself states, "Other words and phrases that appear in quotation marks have special meaning. Refer to Section H, Definitions." D.E. 22, Exhibit C, CP 00 10 06 07, Page 1. The word "building" in the vacancy provision is not listed in quotes indicating it has a special meaning and its ordinary meaning applies.[1]

Like here, the allegedly ambiguous provision in *Fabricant* (the hurricane deductible) was placed in a section (Deductible- Section I) that "created" an alleged ambiguity in the plaintiffs' eyes. Notably, in rejecting the plaintiffs' arguments on a motion to dismiss, the *Fabricant* court

---

[1] "Building" is also clearly used in its ordinary definition in Section A.5.a of CP 00 10 06 07 describing coverage for newly acquired or constructed buildings. D.E. 22, Exhibit C

- 5 -

FOWLER WHITE BURNETT P.A. • ONE FINANCIAL PLAZA, SUITE 2100, 100 SOUTHEAST THIRD AVENUE, FORT LAUDERDALE, FL 33394• (954) 377-8100

did not find that these different sections created any ambiguity, and, based on reading the policy as a whole, dismissed the case. *Id*., at 1333.

As the court noted in *Fabricant*, "Florida courts have cautioned that declarations pages should not be read in isolation." *Id*., at 1332. As in *Fabricant*, Plaintiffs seek to divorce the rest of the policy from their misunderstanding of the declarations pages. If the Court "considers the policy as a whole and gives effect to each of its provisions," it must come to the conclusion that the word "building" is afforded its ordinary meaning as defined by the Vacancy Provision of the policy, notwithstanding Plaintiffs' incorrect reading of the declarations page.

*Fabricant* is not unique. In *St. Paul Guardian Ins. Co. v. Canterbury Sch. of Florida, Inc*., 548 So.2d 1159, 1160 (Fla. 2d DCA 1989), the court found the trial court erred by finding that an item listed on the declarations page could be read in isolation to provide coverage. *Id*. The court rejected the plaintiffs' argument that, because the school was called an "insured" in the declarations page, it was an insured under the policy, even though the school was not listed in the policy form under the coverage section. *Id*., at 1160 ("The fact that the school is called the insured in the declarations page does not make it an insured for all purposes."). Instead the court held that, by considering the entire policy and giving effect to every provision thereof, "any apparent ambiguity regarding Item 1 of the declarations and the policy's definition of an insured is clarified." *Id*., at 1161; see also *Tomlinson v. State Farm Fire and Cas. Co*., 579 So.2d 211, 212-13 (Fla. 2d DCA 1991) (declaration page of umbrella policy stating that policy covered all land motor vehicles did not create motorcycle coverage).

Yet another declarations page argument was addressed in *Carniero da Cunha v. Standard Fire Ins. Co*., 129 F.3d 581 (11th Cir. 1997). In *Carniero de Cunha*, the plaintiffs owned three story townhomes and sought flood insurance coverage for hurricane damage to the ground floor

- 6 -

Fowler White Burnett P.A. • One Financial Plaza, Suite 2100, 100 Southeast Third Avenue, Fort Lauderdale, FL 33394• (954) 377-8100

of their homes. *Id*. at 586. The insurers denied coverage on the basis that federal regulations limited coverage to levels elevated above base flood elevation. The insureds pointed to purported ambiguities in their declarations pages (references to "non-elevated" homes or homes with "three or more floors with no basement") in an attempt to construct coverage. *Id*., at 586-87. The court rejected this attempt to create ambiguity because the policy, when read as a whole, clearly limited coverage to floors above base flood elevation. *Id*. at 588; see also *Garcia v. Omaha Prop.and Cas. Ins. Co*., 933 F. Supp. 1064, 1069-70 (S.D. Fla. 1995). All of these recent Florida decisions considered and rejected arguments based on alleged ambiguities created by text in a property insurance declarations page. All of these courts determined that, when the policies were read as a whole, no irreconcilable ambiguity was created by the text of the declarations pages.

II. <u>The Policy Should be Construed to Give Force and Effect to All Provisions and the Court Must Look to the Ordinary and Plain Meaning of Policy Terms</u>

The object of a vacancy provision is to eliminate high risk when buildings are vacant for more than 60 days with respect to the perils listed including vandalism, theft and attempted theft. In Florida, insurance contracts are construed in accordance with the plain language of the policies. *Prudential Prop. & Cas. Ins. Co. v. Swindal*, 622 So. 2d 467, 470 (Fla. 1993). Insurance policy terms should be interpreted[2] in their "ordinary sense," affording the policy a "reasonable", "practical" and "sensible interpretation" rather than a "strained," "forced" or "unrealistic construction." *Siegle v. Progressive Consumers Ins. Co*., 819 So. 2d 732, 736 (Fla. 2002) (citing *General Accid. Fire & Life Assur. Corp. v. Liberty Mut. Ins. Co*., 260 So. 2d 249,

---

[2] The interpretation of an insurance contract is a question of law to be determined by the Court. See, e.g., *Fabricant v. Kemper Independence Ins. Co*., 474 F. Supp.2d 1328, 1330 (S.D. Fla. 2007); *Graber v. Clarendon Nat'l Ins. Co*., 819 So. 2d 840, 842 (Fla. 4th DCA 2002).

- 7 -

FOWLER WHITE BURNETT P.A. • ONE FINANCIAL PLAZA, SUITE 2100, 100 SOUTHEAST THIRD AVENUE, FORT LAUDERDALE, FL 33394• (954) 377-8100

253 (Fla. 4th DCA 1972) ("[T]erms of an insurance policy should be taken and understood in their ordinary sense and the policy should receive a reasonable, practical and sensible interpretation consistent with the intent of the parties--not a strained, forced or unrealistic construction."); *General Star Indemnity Co. v. West Florida Village Inn, Inc*., 874 So. 2d 26, 29 (Fla. 2d DCA 2004) ("contracts of insurance should receive a construction that is reasonable, practical, sensible and just"); *Weldon v. All American Life Ins. Co*., 605 So. 2d 911, 915 (Fla. 2d DCA 1992). What could be more strained than the assertion that seven buildings are actually one building for the purposes of the policy's vacancy provision.

In construing a policy, courts should read the policy as a whole, endeavoring to give every provision its full meaning and operative effect. *Auto-Owners Ins. Co. v. Anderson*, 756 So. 2d 29, 34 (Fla. 2000). By statute, insurance contracts are to be construed according to the "entirety of [their] terms" and as "amplified," "extended," or "modified" by any endorsement. Fla. Stat. § 627.419(1) ("Every insurance contract shall be construed according to the entirety of its terms and conditions as set forth in the policy and as amplified, extended, or modified by any application therefor or any rider or endorsement thereto."); see also *Nationwide Mut. Fire Ins.Co. v. Olah*, 662 So.2d 980, 982 (Fla. 2d DCA 1995). In the instant case, the Vacancy Provision itself does not employ quotations, bold or italics and defines "building" by its ordinary meaning. "Building" is not an ambiguous term and is defined by Merriam-Webster as "a usually roofed and walled structure built for permanent use (as for a dwelling)." Employing the ordinary definition, as the Court must should, there is no ambiguity in the vacancy provision.

Insurance contracts should not be interpreted to lead to absurd conclusions. See *Travelers Indem. Co. v. Milgen Dev. Inc*., 297 So. 2d 845 (Fla. 3d DCA 1974) (if one interpretation of an insurance policy, viewed with other provisions of the policy and its general object and scope,

- 8 -

FOWLER WHITE BURNETT P.A. • ONE FINANCIAL PLAZA, SUITE 2100, 100 SOUTHEAST THIRD AVENUE, FORT LAUDERDALE, FL 33394• (954) 377-8100

would lead to an absurd conclusion, that interpretation must be abandoned and one consistent with reason and probability adopted). Courts have applied this sensible approach to policies where plaintiffs have urged a strained reading of a declarations page, inconsistent with the terms of the policy as whole. See, e.g., *Fabricant v. Kemper Independence Ins. Co.,* 474 F. Supp.2d 1328, 1331 (S.D. Fla. 2007); *St. Paul Guardian Ins. Co. v. Canterbury Sch. of Florida, Inc.*, 548 So. 2d 1159 (Fla. 2d DCA 1989). Employing a definition where seven buildings were treated as one would lead to an absurd result and provide JJD more than the policy they purchased. The interpretation that JJD could leave a building completely vacant and later argue that the policy's vacancy exclusion means that 31% of all buildings covered by the policy must be vacant to enforce the exclusion is exactly such an absurd conclusion.

IV. Referring to the Underlying Loss as a Burglary as Opposed to Vandalism, Theft or Attempted Theft is Semantic Foolishness

The Florida Criminal Code Sec. 810.02 defines a "burglary" as :

"…1. Entering a dwelling, a structure, or a conveyance with the intent to commit an offense therein, unless the premises are at the time open to the public or the defendant is licensed or invited to enter; or 2. Notwithstanding a licensed or invited entry, remaining in a dwelling, structure, or conveyance:

a. Surreptitiously, with the intent to commit an offense therein; b. After permission to remain therein has been withdrawn, with the intent to commit an offense therein; or, c. To commit or attempt to commit a forcible felony, as defined in s. 776.08."

If the cause of the subject loss in this case were a burglary, there would be no case because no damages would result from the simple act of entering or remaining in the building without permission. The damages claimed are clearly the result of theft, vandalism and attempted theft as they seek to recover for stolen property and associated damage. The plain language of the vacancy provision states, "We will not pay for any **loss or damage caused by**

- 9 -

FOWLER WHITE BURNETT P.A. • ONE FINANCIAL PLAZA, SUITE 2100, 100 SOUTHEAST THIRD AVENUE, FORT LAUDERDALE, FL 33394• (954) 377-8100

any of the following even if they are Covered Causes of Loss: (a) Vandalism; …;(e)Theft, or (f) Attempted Theft." (*emphasis added*, DE 22 Exhibit C, CP 00 10 06 07, Page 11)  Arguing that the damages are somehow not caused by vandalism, theft or attempted theft is without basis.

V. <u>The Affidavit of David Ezagui is Insufficient to Support a Finding that Customary Operations were Taking Place.</u>

JJD now claims that because maintenance workers may have occasionally been at the building and a ladder was kept there, the building may not have been vacant.  This affidavit testimony clearly conflicts with Ezagui's prior deposition testimony as outlined in this Court's prior order. [DE 35].  It is undisputed that the building was not rented to a tenant during the 60 days prior to the loss.  It is also undisputed that the building was in use as a restaurant when the last tenant vacated the building and when the policy was issued.  Even had JJD actually used the building in some way, which it did not, the building would still be vacant under the policy terms. *Saiz v. Charter Oak Fire Ins. Co.*, 299 Fed. Appx. 836 (10th Cir. Colo. 2008)(applying the ordinary meaning of the term "customary" when interpreting whether a restaurant was vacant and determining that a building described as a restaurant in the policy that was used as an office was still "vacant" as it was not being used for "customary operations").

The building is clearly described as a restaurant in the supplementary declarations. Furthermore, this Court has previously recognized that, "At his deposition, Mr. Ezagui admitted that the building became unoccupied in June 2009 when the Cohiba Restaurant stopped occupying the building and remained unoccupied until April 2011. (Dep. 8:25-9:19.)  Because the restaurant stopped occupying the building in June 2009 and the building was unoccupied until April 2011, there is no question that 31% of the building was not used as a restaurant between August 1, 2009 and October 8, 2009.'" [D.E. 35]

- 10 -

FOWLER WHITE BURNETT P.A. • ONE FINANCIAL PLAZA, SUITE 2100, 100 SOUTHEAST THIRD AVENUE, FORT LAUDERDALE, FL 33394• (954) 377-8100

VI. <u>Based on this Court's Prior Ruling, Discovery Could only be Relevant if the Vacancy Provision was Determined to be Ambiguous</u>.

Plaintiffs' argue that summary judgment is precluded because they must take additional discovery. They argue that the denial, in part, of a motion for protective order is a *de facto* statement that summary judgment is premature. However, they fail to read the Order regarding the protective order carefully. The Order [D.E. 32] clearly indicates that discovery related to this declaratory action could only be relevant in the event that the vacancy provision in question is determined to be ambiguous. JJD ignores the majority of the Order regarding the exclusion of discovery when a policy term is unambiguous. Further, JJD again cites *American Strategic Ins. Co. v. Lucas-Solomon*, 927 So.2d 184 (Fla 2d DCA 2006), for the proposition that somehow, JJD's expectations are relevant. This Court has already ruled that, "Under the authority of *Deni*, this Court agrees with American Empire that the intermediate appellate court's subsequent opinion in *American Strategic Insurance Co. v. Lucas-Solomon*, 927 So. 2d 184, 186 (Fla. 2d DCA 2006), purporting to endorse consideration of extrinsic evidence as to the parties' reasonable expectations in entering into an insurance contract, cannot be squared with *Deni*, at least in the event of a patent (as opposed to latent) ambiguity. There is no question that extrinsic evidence as to the insured's reasonable expectations in entering into an insurance contract is foreclosed by *Deni*." [D.E. 32]. There is no reasonable explanation as to why JJD would continued to pursue an argument this Court has already rejected.

Further, a scheduling order was issued in this case on March 29, 2011 [D.E. 7]. JJD has had ample time to conduct discovery and should not be permitted to simply indicate additional discovery is necessary because they failed to properly notice a deposition. *Parks v. City of*

FOWLER WHITE BURNETT P.A. • ONE FINANCIAL PLAZA, SUITE 2100, 100 SOUTHEAST THIRD AVENUE, FORT LAUDERDALE, FL 33394• (954) 377-8100

*Carrollton*, 2005 U.S. App. LEXIS 19917 (11th Cir. Ga. Sept. 14, 2005).  Regardless, discovery would only potentially be relevant if the vacancy provision were ambiguous, which it is not.

WHEREFORE American Empire respectfully requests this Court grant its Motion for Summary Judgment, retain jurisdiction to rule on pending motions for sanctions and provide whatever other relief this Court deems appropriate.

s/ Morris D. Pataky
RORY ERIC JURMAN
Florida Bar No. 194646
Email: rjurman@Fowler-white.com
MORRIS D PATAKY
Fla. Bar No. 564311
Email: mpataky@fowler-white.com

FOWLER WHITE BURNETT P.A.
One Financial Plaza, Suite 2100
100 Southeast Third Avenue
Fort Lauderdale, Florida 33394
Telephone:  (954) 377-8100
Facsimile:   (954) 377-8101

### CERTIFICATE OF SERVICE

I hereby certify that on July 18, 2011, the foregoing document was electronically filed with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

/s/Morris D. Pataky
MORRIS D. PATAKY

- 12 -

FOWLER WHITE BURNETT P.A. • ONE FINANCIAL PLAZA, SUITE 2100, 100 SOUTHEAST THIRD AVENUE, FORT LAUDERDALE, FL 33394• (954) 377-8100

CASE NO. 9:11-CV-80247-DTKH

- 13 -

## SERVICE LIST

Sanford Topkin, Esq.
TOPKIN, EGNER, PARTLOW & RADER, P.L.
1166 W. Newport Center Drive, Suite 309
Deerfield Beach, Florida 33442
(954) 422-8422
(954) 422-5455 fax

and

Linda M. Knoerr, Esq.
Ryan C. Ratliff, Esq.
Knoerr Ratcliffe Law Group
9900 West Sample Road, Suite 330
Coral Springs, FL 33065
Telephone:  954-749-3151
Facsimile:   954-749-3890
Email: linda@krlg.net
Email: ryan@krlg.net
***Attorneys for Plaintiff, JJD Associates Of Palm Beach, Ltd.***

W:\82173\REPLY284-Summary Judgment-MDP.docx{7/18/11}

- 13 -

FOWLER WHITE BURNETT P.A. • ONE FINANCIAL PLAZA, SUITE 2100, 100 SOUTHEAST THIRD AVENUE, FORT LAUDERDALE, FL 33394• (954) 377-8100