## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 11-80247-CV-HURLEY/HOPKINS

JJD ASSOCIATES OF PALM
BEACH, LTD.,

      Plaintiff,

vs.

AMERICAN EMPIRE SURPLUS LINES
INSURANCE COMPANY,

      Defendant.

_____/

### ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

      **THIS CAUSE** is before the Court upon Defendant's motion for summary judgment [DE # 22]. The motion has been fully briefed, *see* DE # 36, 37, and oral arguments were held on November 15, 2011. The motion is now ripe for review.

### I.

      The Court has removal jurisdiction over the instant proceeding because it is an action that is subject to removal pursuant to 28 U.S.C. §1441(b) and one over which this Court would have original diversity jurisdiction pursuant to 28 U.S.C. § 1332(a)(1). Venue is proper in this Court because it was removed from the Florida Circuit Court of the Fifteenth Judicial Circuit in and for Palm Beach County, Florida.

### II.

      Summary judgment is warranted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c);

*Celotex Corp. v. Cattrett*, 477 U.S. 317, 322 (1986).  The moving party bears the burden of meeting this exacting standard, *see Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970), and all facts and inferences from the record are viewed in the light most favorable to the non-moving party.  *See Matsuhita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)

This action arises out of an insurance policy provided by Defendant, American Empire Surplus Lines Insurance Company ("American Empire"), to Plaintiff, JJD Associates of Palm Beach, Ltd. ("JJD").  The policy was in effect on October 8, 2009 when the covered property was allegedly burglarized and vandalized.  After JJD provided Defendant with notice of the loss and a proof of loss as required by the policy, Defendant denied coverage on the basis that the vandalized property was vacant, as defined by the policy, at the time of the loss and therefore exempt from coverage pursuant to section E.6. of the Building and Personal Property Coverage Form.  Section E.6.a.(1)(b) states:

> When this policy is issued to the owner or general lessee of a building, building means the entire building. Such building is vacant unless at least 31% of its total square footage is: (i) rented to a lessee or sub-lessee and used by the lessee or sub-lessee to conduct its customary operations; and/or (ii) Used by the building owner to conduct customary operations.

Notice of Removal, at 40 [DE # 1].  The policy goes on to state in part E.6.b.:

> If the building where loss or damage occurs has been vacant for more than 60 consecutive days before that loss or damage occurs:  (1) We will not pay for any loss or damage caused by any of the following even if they are Covered Causes of Loss: (a) Vandalism . . . (e) Theft; or (f) Attempted theft.

*Id.*

## A.

Differing interpretations of *building*, *premises*, and *property* are the crux of the parties' disagreement as to whether the property at issue was vacant for sixty days prior to the loss.  The

covered property is a shopping center, of sorts, that includes seven sub-properties.  At oral argument, the parties represented that the some of the sub-properties are adjoined, while others are detached. The sub-property that suffered the loss at issue is identified in the policy as premises number six, a restaurant located at 7440 Lake Worth Road ("premises six").  The parties disagree over whether *building* in the vacancy provision refers to each premises individually or the shopping center as a whole.

If *building* means the shopping center as a whole, the vacancy provision would not apply because the portion of the shopping center that was vacant for sixty days prior to the loss, which includes premises six, is not at least thirty-one percent of the entire shopping center.  If, on the other hand, *building* refers to each of the seven subdivisions of the shopping center individually, then the vacancy provision would likely apply because, arguably, at least sixty-nine percent of premises six was vacant for sixty days prior to the loss.

The interpretation of an insurance policy is a question of law.  *Cal-Dive Int'l, Inc. v. Seabright Ins. Co.*, 627 F.3d 110 (5th Cir. 2010).  In interpreting the policy, the Court will apply Florida law, which requires the Court to read the policy as a whole, *Shaw v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 605 F.3d 1250, 1252 (11th Cir. 2010), and resolve any ambiguities in the policy in favor of the insured.  *Siegle v. Progressive Consumer Ins. Co.*, 819 So. 2d 732, 735 (Fla. 2002); *Golden Door Jewelry Creations, Inc. v. Lloyds Underwriters Non-Marine Ass'n*, 117 F.3d 1328, 1337 (11th Cir. 1997).  When, as in the instant case, the insurer has drafted the policy, courts must construe coverage so as to provide the broadest coverage to the insured.  *Akel v. Dorcelus*, 793 So. 2d 1049 (Fla. Dist. Ct. App. 2001).  Nevertheless, in no event should a court resort to a strained, forced, or unrealistic construction, and the mere fact that a policy is confusing or presents challenges

in interpretation does not render it ambiguous.  *Siegle*, 819 So. 2d at 736.  "[A] policy provision is ambiguous only if 'susceptible to more than one reasonable interpretation, one providing coverage and the [ ] other limiting coverage.'"  *Shaw*, 605 F.3d at 1252 (quoting *Auto-Owners Ins. Co. v. Anderson*, 756 So. 2d 29, 34 (Fla. 2000)).

Looking to the instant policy's specific provisions, the Court notes at the outset that the parties have not indicated any particularized definition of *building* in the policy outside the vacancy provision itself.  In the vacancy provision, the policy states that "building means the entire building." *Id.*  This elaboration is not particularly illuminating.  On the Declarations pages under "description of premises," *building* is used in a potentially ambiguous way in that the policy refers to premises numbered one through seven but in each case refers only to "Bldg. No. 1."  Def.s Mot. Summ. J., Ex. "C," at 8-14 [DE # 22-1].[1]  From this use alone it is unclear whether *Bldg. No. 1* indicates one building on each of premises one through seven or that each of the seven premises are constituents of a building identified as building number one or that the policy is referring to building number one on premises number one, et cetera.  However,  the policy must be read as a whole, *Shaw*, 605 F.3d at 1252, and, applying this rule to the instant case, the Court looks next to the Commercial Property Coverage Part Supplemental Declarations.  The additional declarations, which the primary Declarations page reference, contain another use of *building* that provides more context.  On each of these seven pages—one for each premises—under *Location*, the policy provides an address and a description in the form of "One Unit Building," "Eleven Unit Building,"or, as in the case of

---

[1]  The exhibits are inconsistently marked.  In the response, Defendant refers to several exhibits.  However, there is only one attachment, and it is marked "exhibit C."  For the sake of clarity, the Court emphasizes that it is referencing the first and only attachment to docket entry twenty-two.

4

premises six, "One Unit Building (Restaurant)." With this additional context, it becomes clear that each premise contains a single building with one or more units. In this light, the policy, while by no means a model of clarity, is not ambiguous and must be construed according to it terms. The policy's odd layout and use of cross-references may cause some initial bewilderment but, upon the application of some industry, ultimately yields only one reasonable interpretation. The Court therefore finds that *building*, as used throughout the policy and in the vacancy provision, refers to each premises individually. This is the only reasonable construction in light of the policy as a whole and also has the benefit of better conforming to the ordinary use of the term building, which would rarely by used to include a group of seven premises, not all of which are bounded by the same walls and roof.

## B.

Consequently, to prevail JJD must show that the vacancy provision did not apply to premises six at the time of the loss. JJD attempts to do so in two ways. First, JJD argues that because the action causing the loss may technically be defined as a burglary (and was indeed listed as such in the police report), the vacancy provision is inapplicable because it only precludes recovery for thefts and vandalism. Generally speaking, the modern definition of *burglary* is a breaking and entering of the building of another with intent to commit a crime therein.[2] The Court will apply this prevailing meaning in interpreting the policy rather than any of the more nuanced legal definitions employed at various times in various jurisdictions. *Siegle*, 819 So. at 735. Similarly, in interpreting *vandalism*, courts have found that, when used in an insurance policy, the term "should not be construed to apply

---

[2] At common law, *burglary* had a more nuanced definition that required the activity to take place at night, the building to be another's dwelling, and the intended crime to be a felony. 12A C.J.S. *Burglary* § 1. Modern courts have substantially liberalized the definition. *Id.*

5

only to a hostile and willful destruction, but should be given its popular meaning, including any unusual destruction caused by the commission of a wrongful act"  46 C.J.S. *Insurance* § 1324.

In the instant case, the evidence shows that on October 8, 2009, police noted entry through the rear door of the premises by means of a "prying tool" at night and removal of copper wiring from a water heater and piping in the roof. Pl.'s Resp. Opp. Def.'s Mot. Summ. J., Ex. C, at 2-3 [DE # 36-3].[3]  The police report indicates possible violations of Fla. Stat. §§ 810 (burglary) and 812 (theft). Regardless of the ideal legal characterization, however, it is clear that the damage for which JJD seeks to recover qualifies as either theft or vandalism even if these acts were, under these circumstances, also constituents of another act called burglary.  The property damage is excluded as vandalism, and the removal of the copper wiring is excluded as theft.

As a second means of escaping the vacancy policy, Plaintiff also disputes whether premises six was truly vacant.  Plaintiff points out that "the agent for the center has gone into the location several times after the tenant left, and the maintenance personal frequent the premises and kept a ladder and tools in the area which he used to repair the center." Pl.'s Resp. Opp. Def.'s Mot. Summ. J., at 4 [DE # 36].  However, under the definition of *vacancy* provided in the policy, even if Plaintiff's allegations with respect to its use of the premises are true, this sort of use does not qualify so as to make the property not vacant.  To not be vacant under the policy, the premises must be rented or "used by the building owner to conduct *customary operations*."  Def.'s Mot. Summ. J., at 3 [DE # 22].  Plaintiff's informal use of the vacant premises to store tools and sporadic entry by the agent for the center and maintenance personnel are not the "customary" operations contemplated by the policy.  Moreover and perhaps more importantly, even if this were qualifying use, it plainly did

---

[3]  The exhibit is unmarked, but Plaintiff refers to it as "exhibit 'C,'" in its filings.

Order Granting Defendant's Motion for Summary Judgment
JJD Assocs. of Palm Beach, Ltd. v. Am. Empire Surplus Lines Ins. Co.
Case No. 11-80247-CV-HURLEY/HOPKINS

not occupy the requisite thirty-one percent of the premises.  Therefore, the Court need not delve into

the question whether storage of maintenance equipment in a building that was initially a restaurant

qualifies as a landlord's "customary use."  Either way, the use suggested by Plaintiff is insufficient

to prevent the application of the vacancy provision.

## III.

Accordingly, it is hereby **ORDERED** and **ADJUDGED** that:

1.      Defendant's Motion for Summary Judgment [DE # 22] is **GRANTED**.

2.      All pending motions not otherwise ruled upon are **DENIED AS MOOT**.

3.      Pursuant to Federal Rule of Civil Procedure 58(a), the Court will enter final judgment

by separate order.

**DONE** and **SIGNED** in Chambers at West Palm Beach, Florida, this 22nd day of November,

2011.

Daniel T. K. Hurley
United States District Judge

*Copies provided to counsel of record*

7